Filed 4/8/21  Price v. Henry CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| WILLIAM PRICE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>DANIEL HENRY,<br><br>Defendant and Respondent. | F080559<br><br>(Super. Ct. No. 17CECG04232)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Kimberly A. Gaab, Judge.

William Price, in pro. per., for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Jennevee H. De Guzman, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

---

[*] Before Franson, Acting P.J., Meehan, J. and DeSantos, J.

Plaintiff William Price, a self-represented patient of the State Department of State Hospitals, appeals from an order granting a motion for summary judgment on his civil rights cause of action. Price alleged defendant violated his constitutional right to freely exercise his sincerely held religious beliefs by preventing him from fulfilling his obligation to tithe.

Price opposed the motion for summary judgment but did not present any evidence. Instead, he relied on his deposition transcript, which was included in defendant's moving papers. As explained below, our independent review of the record shows Price failed to demonstrate there was a triable issue of *material* fact. The facts that are material to the alleged violation of his right to religious freedom are defined in part by the four-factor test adopted in *Turner v. Safley* (1987) 482 U.S. 78 (*Turner*). Price did not address *Turner* in the papers he filed in the trial court or in his appellate brief. Instead, he erroneously argued *Wisconsin v. Yoder* (1972) 406 U.S. 205—a case that does not involve an institutional setting—controlled.

We therefore affirm the judgment.

## FACTS

"California State Hospital—Coalinga (CSH-Coalinga) is overseen by the State Department of State Hospitals. It is a self-contained, 1,300-bed, psychiatric hospital constructed with a security perimeter. The patients at CSH-Coalinga are committed involuntarily by court order because they have been classified as (1) mentally disordered sex offenders (Welf. & Inst. Code, former § 6316); (2) sexually violent predators (Welf. & Inst. Code, §§ 6602, 6604); (3) not guilty of a crime by reason of insanity (Pen. Code, § 1026); (4) mentally disordered offenders (Pen. Code, §§ 2962, 2972); or (5) mentally ill prisoners transferred from the prison system (Pen. Code, § 2684). Thus, among other things, CSH-Coalinga provides psychiatric treatment for sexual offenders who have completed their prison sentences and have been involuntarily committed for extended

2

treatment. CSH-Coalinga does not accept voluntary admissions." (*Vosburg v. County of Fresno* (2020) 54 Cal.App.5th 439, 443–444.)

CSH-Coalinga has numerous internal security measures, including metal detectors, random searches of dorm and common areas, uniforms and photo identification of patients, lockable units, and patient census counts. Under CSH-Coalinga policies, many types of items are prohibited as contraband. The State Department of State Hospitals maintains statewide and site-specific contraband lists, which identify the items a patient may not possess. The lists include everyday items that could undermine security or heighten the risk of harm to patients and staff.

The State Department of State Hospitals promulgated Administrative Directive 624, which establishes the policies and procedures governing individual patient mail. Pursuant to these procedures, when a patient receives mail, including packages, it must be opened and inspected for contraband. Delivery of third-party mail—that is, mail addressed to a staff member or volunteer for delivery to a patient—is prohibited and such mail must be returned to the sender via the mail center. In addition, the patient's treatment team is to be notified.

CSH-Coalinga also maintains policies regarding gifts to employees and donations. Administrative Directive 146 provides that " 'employees shall not accept gifts from patients or their families, nor make gifts to or on behalf of patients in such a fashion that the patient is singled out to the detriment of other patients. Employees shall avoid any dealing with patients that might be reasonably interpreted as exploitation.' " Administrative Directive 645 regarding donations provides that patients, through the unit supervisor, may forward written requests to Central Program Services (CPS) to donate unwanted personal items, such as books. CPS, which has the authority to accept or refuse any donation based on facility need, evaluates the items and determines whether to approve the donation.

3

CSH-Coalinga policies allow patients to donate money to outside organizations, which donation could be part of their tithe. For example, multiple patients have requested checks be sent to organizations such as Christian Appalachian Project, Kenneth Copeland Ministries, World Wildlife Fund, and Our Daily Bread Ministries. When a patient wants to send a check to an organization, the patient completes a form and sends it to the unit staff for a determination as to whether the proposed disbursement is permissible. Once that determination is made and the proposal is approved, authorization is forwarded to the trust office to process. CSH-Coalinga policies do not allow patients to send funds to any hospital employee.

Price is a patient at CSH-Coalinga. He was involuntarily committed as a sexually violent predator. Price contends he does not belong to a particular religion, denomination or sect, but holds personal religious beliefs based on his interpretation of the Holy Bible.

Defendant Daniel Henry is a vocational education officer with the Department of Police Services at CSH-Coalinga. In this capacity, defendant does not have the authority to amend any policy, administrative directive, or contraband list of the State Department of State Hospitals.

In September 2017, Price approached a chaplain at CSH-Coalinga and asked how he could discharge his obligation to tithe to the church. The chaplain said there was no chapel account, so Price could not tithe money. Price asked if he could buy things from an approved vendor, such as Christian Book Distributors, for the chapel and send them in care of the chaplain. The chaplain stated he did not know. Price told the chaplain that tithing was an obligation to God, the chaplain was God's representative on earth, and the chaplain was the appropriate steward to receive Price's tithe.

In October 2017, Price ordered approximately $200 worth of materials from Christian Book Distributors and a Polsen lavalier microphone from B&H Electronics. The orders were sent to the chaplain at CSH-Coalinga. On November 27, 2017, the

4

two packages addressed to the chaplain arrived at CSH-Coalinga. The packages showed they had been purchased by Price. When the contents were inspected, a staff member notified the hospital police because some of the items were contraband items for patients and the delivery was not the procedure for ordering items needed for pastoral services.

Defendant catalogued the contents of the two packages. He determined the metal lapel pins and a porcelain figurine of an angel were contraband items. In addition, he determined a black wooden sign, four flags, a tabletop plaque, and the Polsen lavalier microphone were improperly shipped to the chaplain.

On November 29, 2017, defendant interviewed the chaplain and was told the chaplain had never asked patients to order items for him or the chapel. The same day, defendant interviewed Price. Price stated he ordered and paid for the items and had them shipped to the chaplain for the chapel. During the interview, defendant told Price that he was holding the items and would not give them to the chaplain. Price replied that the items were not gifts or donations, but a tithe to his God, and should be immediately released into the chaplain's control. Defendant refused to do so, concluded the interview, and left the unit.

## PROCEEDINGS

In December 2017, Price filed a complaint alleging a denial of his constitutional rights in violation of section 1983 of title 42 of the United States Code and the Religious Freedom Restoration Act of 1993 (42 U.S.C. §§ 2000bb et seq.). After a demurrer was sustained to the latter claim, Price filed an amended complaint alleging only a violation of section 1983 of title 42 of the United States Code based on the denial of his right to freely exercise his religious beliefs, which includes an obligation to tithe.

In August 2019, defendant filed a notice of motion for summary judgment, a separate statement of undisputed facts, a memorandum of points and authorities in support of the motion, a declaration of defendant, and a declaration of Yvonne Beuster.

5

Defendant also lodged a transcript of the Price deposition taken on July 10, 2019. The appellate record includes the notice of motion, the deposition transcript, and the separate statement. It does not include defendant's memorandum of points and authorities, defendant's declaration, or Beuster's declaration.

In September 2019, Price responded to the motion for summary judgment by filing a two-page document titled "OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT." Price listed four facts from defendant's separate statement of undisputed facts and provided citations to his deposition transcript to refute the claimed facts. Price quoted a provision in Administrative Directive 640 stating that CSH-Coalinga, as a state agency, is required to refrain from active promotion of any specific form of religious belief or activity and is required to refrain from any opposition to such belief or activity. In addition, Price quoted statements in *Wisconsin v. Yoder*, *supra*, 406 U.S. 205 about the First Amendment and the free exercise of religion.

In November 2019, defendant filed a reply to Price's objection to the motion for summary judgment. Defendant argued the four facts disputed by Price were not triable material facts that needed to be presented to a jury. Defendant also asserted the other facts in its separate statement were established because Price did not contest them and did not submit any evidence contradicting them.

On November 14, 2019, the trial court issued a minute order stating no party had requested oral argument and its tentative ruling would become the order of the court. The four-page tentative ruling contained a detailed analysis supporting the court's decision to grant the motion.

On November 15, 2019, the trial court filed Price's six-page handwritten response to defendant's motion for summary judgment. Price stated the document was handwritten because he had no money for printing documents at the computer lab. Price argued it was immaterial if some of the items would be deemed contraband if possessed

6

by a patient because they were sent to a staff member for whom " 'contraband' " does not apply. He also asserted: "There is no governmental interest in preventing staff from receiving these items." An appendix to Price's response referred to nine paragraphs in defendant's separate statement of undisputed facts that Price contend were contradicted by his deposition testimony. Price also argued *Yoder* was directly on point because the issue he presented was not the introduction of contraband in a confined setting.

On November 25, 2019, the trial court signed and filed a judgment granting defendant's motion for summary judgment and dismissing the action with prejudice. In December 2019, Price timely filed a notice of appeal. In January 2020, Price filed his notice designating the record on appeal.

## DISCUSSION

I.     SUMMARY JUDGMENT MOTIONS

A.     Basic Principles

Summary judgment is a mechanism that cuts through the parties' pleadings and allows the court to determine whether a trial is necessary to resolve their dispute. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) Properly granted summary judgment motions have "a salutary effect, ridding the system, on an expeditious and efficient basis, of cases lacking any merit." (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 248.)

Summary judgment is properly granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)[1] In moving for summary judgment, a "defendant … has met his or her burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action … cannot be established, or that there is a

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

7

complete defense to the cause of action." (§ 437c, subd. (p)(2).) If the defendant does not meet that burden, the motion must be denied, even if the plaintiff has not opposed it adequately or at all. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 742–743; see *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.) Once the moving defendant has met its initial burden, however, "the burden shifts to the plaintiff … to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(2).) The plaintiff must present facts, supported by admissible evidence, raising a triable issue of material fact. (*Id*., subds. (b)(2), (b)(3), (p)(2); *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477.)

B.    <u>Appellate Review</u>

1.    *Standard of Review*

"Summary judgments are reviewed de novo." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 67–68.) In our review, "we apply the same three-step analysis required of the trial court: We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue." (*Torres v. Reardon* (1992) 3 Cal.App.4th 831, 836.) On appeal, we consider "all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.*, *supra*, 26 Cal.4th at p. 476.)

2.    *Appellant's Burden on Appeal*

Although our review of the grant of summary judgment is de novo, the appellant bears the burden of showing error, even if the appellant did not bear the burden in the trial court. (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368,

8

379.)  The appellant must affirmatively demonstrate error and point out the triable issues the appellant claims are present by citation to the record and any supporting authority. Our review is limited to issues that have been adequately raised and briefed.  (*Ibid*.)  The appellant is also responsible for providing the appellate court with a record adequate to address the issues raised on appeal and demonstrate prejudicial error.  (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; *Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.)

If the record is inadequate for meaningful review, the appellant has failed to carry his burden of showing error and the decision of the trial court should be affirmed. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)  Stated another way, the failure to provide an adequate record on an issue requires that the issue be resolved against the appellant. (*Ibid*.)

## II.	FREE EXERCISE OF RELIGION

In essence, Price's civil rights cause of action is a claim that the application of CSH-Coalinga's policies governing donations, gifts, and mailing packages are unconstitutional as applied to the packages he had sent to the chaplain.  Our discussion of this claim begins with the principles defining a violation of the right to freely exercise one's religion.

### A.	Legal Principles

The United States Supreme Court has determined inmates retain those First Amendment rights that are not inconsistent with legitimate penological objectives.  (*Pell v. Procunier* (1974) 417 U.S. 817, 822.)  We conclude this principle also applies to patients detained under the Sexually Violent Predator Act (Welf. & Inst. Code, § 6600 et seq.; see *Youngberg v. Romeo* (1982) 457 U.S. 307, 321–322).  A patient or prisoner attempting to state a First Amendment claim based on a violation of the free exercise of religion must allege a defendant (1) burdened the practice of the patient's

9

religion by preventing him or her from engaging in a sincerely held religious belief and (2) did so without any justification reasonably related to legitimate penological interests. (*Shakur v. Schriro* (9th Cir. 2008) 514 F.3d 878, 884.)

When the burden on an inmate's practice of his religion results from the application of a prison regulation, the determination whether that regulation is reasonably related to legitimate penological interests is determined by analyzing the four factors identified by the United States Supreme Court in *Turner*, *supra*, 482 U.S. 78. We conclude the same factors must be balanced in determining whether a regulation violates an involuntary patient's right to practice his religion. Those factors are (1) whether there was a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether an alternative means of exercising the fundamental right remained open to the prisoner; (3) how accommodating the asserted constitutional right would impact the guards and other inmates, and the allocation of prison resources generally; and (4) whether there was an absence of ready alternatives to the regulation in question. (*Turner*, *supra*, 482 U.S. at pp. 89–91; *Bailey v. Loggins* (1982) 32 Cal.3d 907, 920.) Although *Turner* involved First Amendment rights of free speech and association, the four factors in that decision have been used to analyze a claim that prison rules violated the First Amendment right to free exercise of religion. (*O'Lone v. Estate of Shabazz* (1987) 482 U.S. 342; see *Thompson v. Department of Corrections* (2001) 25 Cal. 4th 117, 131–132.)

The parties have cited, and we have located, no case applying these four factors to an attempt by an inmate or patient to tithe by having materials delivered from a third-party vendor to a chaplain or other religious official at the institution where the

10

inmate or patient is being held.  Cases addressing the right to tithe most frequently appear in the bankruptcy setting.[2]

B.      Analysis of the Four Factors

The trial court's written decision methodically analyzed each of the four factors listed in *Turner*.  Here, we review each of those factors and the evidence presented.

1.      *Reasonable Relationship to a Legitimate Hospital Interest*

The trial court determined the prohibition of third-party mail was reasonably related to CSH-Coalinga's legitimate interest in security, safety and the elimination of smuggling contraband into the hospital.  The court determined allowing patients to send items to staff members could single out the patient to the detriment of other patients or expose patients to exploitation.  In addition, to the extent the items were contraband, they would undermine security and increase the risk of harm to patients and staff.

The objections Price submitted in opposition to the summary judgment motion listed four facts that he contended were disputed.  None of those four facts address whether CSH-Coalinga had a legitimate interest in preventing patients from sending packages to hospital staff.  Price's response filed on November 15, 2019, included the assertion that "[t]here is no government interest in preventing staff from receiving these items."  This assertion does not create a triable issue of material fact because it is not supported by any evidence.

Similarly, Price's appellate brief challenges 12 of the facts set forth in defendant's separate statement.  None of the facts Price contends are disputed address whether CSH-Coalinga had a legitimate interest in preventing patients from sending packages to

---

[2]     See generally Zywicki, *Rewrite the Bankruptcy Laws, Not the Scriptures: Protecting A Bankruptcy Debtor's Right to Tithe* (1998) 1998 Wis. L. Rev. 1223 and Pollak, *"Be Just Before You're Generous": Tithing and Charitable Contributions in Bankruptcy* (1996) 29 Creighton L. Rev. 527.

11

hospital staff. Price contends none of the items sent were contraband, but that contention does not address all the reasons for prohibiting third-party mail.

To summarize, the papers Price filed in the trial court and his appellate brief do not demonstrate the existence of a triable issue of material fact relating to whether the prohibition of third-party mail was reasonably related to a legitimate interest in security, safety and the elimination of smuggling contraband into the hospital.

### 2. *Alternative Means of Exercising the Right to Tithe*

The trial court determined the evidence showed that Price was not denied all forms of his asserted right to tithe. One example given was that Price could donate items determined by CPS as allowable donations. The facts Price attempted to dispute in the trial court and on appeal do not address this alternative. Thus, Price has not demonstrated a triable issue of fact exists as to tithing by means other than third-party mail.

### 3. *Impact of Accommodation*

The trial court determined from the prayer for relief in Price's amended complaint that the accommodation he requested was permission to ship contraband to the chapel or the chaplain of the hospital chapel. The court concluded the uncontradicted evidence showed such an accommodation would burden staff by increasing the need for further scrutiny of mail and packages and, in addition, the hospital had a compelling interest in restricting dangerous contraband within the hospital. Although not mentioned by the trial court, the danger posed by having a porcelain angel accessible within the chapel appears self-evident.

Our independent review shows the facts Price attempted to dispute in the trial court and those mentioned in his appellate brief do not address the burden of accommodating his request. As a result, Price has not demonstrated a triable issue of fact pertaining to this factor.

12

### 4. *The Regulation as an Exaggerated Response*

The trial court determined the burden is on the patient to show that there are obvious, easy alternatives to the regulation. (See *Turner*, *supra*, 482 U.S. at p. 90 ["the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns"].) The court stated that Price had not filed a substantive opposition or presented any evidence and, therefore, had not shown there was an easy alternative to the prohibition of third-party mail.

We have reviewed Price's objection to the summary judgment motion and the handwritten response he filed the day after the trial court issued its minute order granting the summary judgment motion. We have located nothing that suggests, much less establishes, the existence of an alternative to prohibiting third-party mail. Similarly, the facts Price attempts to dispute in his appellate brief do not address an alternative to the prohibition. Thus, Price has not demonstrated a triable issue of fact pertaining to the existence of an obvious, easy alternative to the prohibition of third-party mail.

Based on our review of the four factors identified in *Turner*, we conclude the trial court properly granted the motion for summary judgment. The unopposed portions of defendant's moving papers make the necessary showing that CHS-Coalinga's policies and procedures are reasonably related to legitimate hospital interests.

## DISPOSITION

The judgment is affirmed. Respondent shall recover his costs on appeal.

13